606 A.2d 1250

**CARROLL SIGN COMPANY, INC., t/a Trone Outdoor Advertising, Appellant,**

v.

**ADAMS COUNTY ZONING HEARING BOARD and County of Adams, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 20, 1991.

Decided April 3, 1992.

Audrey E. Woloshin, for appellant.

Clayton R. Wilcox, for appellee, Adams County Zoning Hearing Bd.

Michael A. George, for appellee, County of Adams.

Before CRAIG, President Judge, KELLEY, J., and LORD, Senior Judge.

CRAIG, President Judge.

Carroll Sign Company, Inc. appeals a decision of the Court of Common Pleas of Adams County affirming a decision of the Adams County Zoning Hearing Board that denied Carroll's application for a permit that would allow the company to maintain a billboard it had erected at the interchange of U.S. Routes 30 and 15 in Adams County.

The facts as found by the zoning hearing board are as follows. Carroll is in the business of constructing billboards on property it leases throughout the Commonwealth. Carroll then leases the billboards to individuals and entities seeking to advertise with the billboards.

Carroll sought to lease property at the interchange of U.S. routes 30 and 15 in Adams County for the purpose of erecting and maintaining a commercial billboard.

In December 1989, Carroll contacted the local municipality in which the property is located to determine the nature of municipal regulations regarding the erection of billboards at the site. Carroll spoke to a person whose identity

is unknown. That person told Carroll that the township had no zoning restrictions, that the township required no building permit for the construction of the billboard, and that Carroll should contact the Pennsylvania Department of Transportation (DOT) for a permit. However, Carroll did not inquire about county zoning.

On January 24, 1990, the county adopted Adams County Interchange Zoning Ordinance, which became effective on March 15, 1990. That ordinance provides:

SECTION 1101 SIGN REGULATIONS FOR NON-RESIDENTIAL USES

The following regulations shall govern the number, size, and placement of signs:

A. For uses permitted in HC–Highway Commercial District:

1. A business or commercial sign(s) shall be permitted on the same lot as the use to which it refers, provided that the total sign area on any one street frontage of any property in single and separate ownership conforms to the following requirements which are based upon building frontage limitations:

a. Forty (40) square feet for those establishments where the building frontage facing the adjoining principal road is fifty (50) feet or less.

b. The maximum area of a sign may or the total allocated sign area may be increased by a maximum of one (1) square foot for every three (3) additional feet of building frontage in excess of fifty (50) feet.

c. Under no circumstances shall the total maximum sign area exceed sixty (60) square feet, unless the bonus provisions established in Section 1101.A.1.b. herein are deemed by the Zoning Hearing Officer to apply.

d. In order to encourage businesses to provide the community with an attractive, unified outdoor advertising scheme, it is further provided that the maximum allowable sign area may be increased by fifteen percent (15%) provided that the user chooses to mount a sign or

a series of signs against the building facade (such a sign may not project outward more than fifteen (15) inches from the facade). Up to six (6) square feet of entitled signage may be devoted to free-standing signs specifically designed and designated to identify "entrances" and "exits", without prejudicing the fifteen percent (15%) bonus.

2. Business or Commercial signs for establishments not located on the primary road frontage, which is subject to the Highway Commercial—HC District, may, with the consent of the owner of the affected property and, if approved as a special exception by the Zoning Hearing Board, be located at the nearest highway intersection to that establishment. In addressing a request for a Special Exception, the Zoning Hearing Board shall consider the following standards:

a. Said sign shall be located no less than twenty (20) feet, not more than fifty (50) feet from the right-of-way for the primary highway, and no less than fifteen (15) feet from the right-of-way for the intersecting roadway.

b. The sign shall not exceed thirty (30) square feet in area.

The property in question is located within the HC–highway commercial district, as designated in the Adams County Interchange Zoning Ordinance.

Carroll signed a lease with the property owner on March 9, 1990. Carroll applied to DOT for a permit to construct a billboard. Carroll indicated on its permit application that there were no zoning regulations applicable to the property in question; however, DOT billboard permit approval is conditioned on the accuracy of the information provided in the application. DOT approved Carroll's permit application on April 19, 1990.

Carroll began work on the billboard after DOT approved its permit application.

Carroll discovered the existence of the county's interchange ordinance as the result of phone calls it received from newspaper reporters on May 12 or 13, 1990.

The county issued a formal notice of violation on May 15, 1990. As indicated in § 1101(A)(1) above, the ordinance permits only on-site billboard advertising in that district. Thus, because Carroll's billboard is not connected to a business located at the site of the billboard, the use is not permitted under the interchange ordinance.

By the time Carroll received the violation notice, 95% of the work on the billboard had been completed, at a total cost of $8,000 to $9,000.

After receiving the violation notice, Carroll completed work on the billboard and leased the sign to commercial customers.

After being cited for the violation, Carroll filed an application for a variance, a reversal of action by the county zoning officer, and a challenge to the substantive validity of the county's interchange ordinance with the county zoning hearing board. The validity challenge asserted that the ordinance is invalid because it pertains to only a portion of the county, that the county's power to enact such an ordinance is pre-empted by DOT highway regulations, and that the ordinance is unconstitutional as applied to Carroll's billboard.

The board concluded that Carroll did not have standing to bring the action because its lease with the property owner became void ninety days after ratification because Carroll did not obtain the necessary approval of Adams County. The board indicated that, assuming Carroll does have standing, it failed to meet its burden of proof for a variance under the ordinance, because (1) it did not establish that denial of a variance would result in unnecessary hardship, or that the land cannot be developed in strict conformity with the ordinance, and (2) any hardship is self-imposed because Carroll entered into a contract to use land in a

manner inconsistent with the terms of the then existing ordinance.

The board, noting that under section 605 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* reenacted by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10605, counties are not required to develop zoning for the entire county, rejected Carroll's constitutional challenge. The board concluded that DOT's power to regulate billboards does not pre-empt the power of local authorities to regulate outdoor advertising. Finally, the board concluded that the ordinance is not unconstitutional because it allows on-site, but not off-site billboards.

On appeal, the trial court concluded that Carroll did have standing, that the MPC authorizes counties to take an area-by-area approach to county-wide zoning, and that Carroll had failed to establish that the ordinance is unconstitutional, either because it differentiates between on-site advertising and off-site advertising, and thus is invalidly prohibitive, or because it violates equal protection.

In its appeal from the trial court's decision, Carroll raises the following issues: (1) whether a county has the discretion to zone only a portion of the area within the county for which local municipalities have not adopted zoning regulations, i.e., must a county zone all areas that have not been zoned by local municipalities; (2) whether a county ordinance that does not establish zoning for all the areas within the county that have not been zoned by local municipalities, and does not allow off-site billboards in the areas in the county the ordinance does zone, is unconstitutional; (3) whether Adams County's Interchange Zoning Ordinance effectively bans billboards as applied, despite the fact that the ordinance purports to zone only a portion of the county; (4) whether the ordinance's regulation of billboards is reasonably related to the health, safety and general welfare of the community; and (5) whether an ordinance that prohibits noncommercial speech violates the First and Fourteenth Amendments of the United States Constitution.

*1. Does the MPC permit counties to zone only a portion of the land in the county that local municipalities have not zoned?*

Carroll argues that the legislative intent underlying sections 602 and 605 of the MPC, 53 P.S. §§ 10602 and 10605, supports its position that counties must zone all areas in the county that local municipal zoning ordinances have not pre-empted. Those sections provide in pertinent part:

### § 10602. County powers

*The powers of the governing bodies of counties to enact,* amend and repeal *zoning ordinances shall be limited to land in those municipalities, wholly or partly within the county, which have no zoning ordinance* in effect at the time a zoning ordinance is introduced before the governing body of the county and until the municipality's zoning ordinance is in effect. The enactment of a zoning ordinance by any municipality, other than the county, whose land is subject to county zoning shall act as a repeal protanto of the county zoning ordinance within the municipality adopting such ordinance.

### § 10605. Classifications

*In any municipality, other than a county,* which enacts a zoning ordinance, *no part of such municipality shall be left unzoned.*

(Emphasis added.)

Carroll argues that these two provisions must be read in pari materia and should be interpreted as (1) allowing counties to zone only those portions of a county that have not been zoned by local municipalities and (2) placing an affirmative duty on the part of counties to zone any portion of the county that has not been zoned by local municipalities. Carroll asserts that this interpretation is proper because otherwise county ordinances that do not zone all of the non-locally zoned land in the county will not be subject to the same degree of scrutiny that local municipal zoning ordinances must withstand and that counties will thus be able to avoid the duty placed on local municipalities to

provide a reasonable amount of land for all lawful land uses.

■ This court agrees with the county that, even if counties do not zone all the unzoned land within the county, counties remain vulnerable to constitutional challenges and cannot avoid their responsibility to provide for all reasonable uses by merely leaving a small, token area available for all undesirable uses. Counties, like local municipalities, must provide for all lawful land uses, either through zoning that encompasses the entire county, or, if the county does not elect to zone all of its land, by leaving a sufficient amount of land available for all lawful purposes. As with local municipalities, if a county directly or indirectly excludes a lawful use entirely, it will be subject to the risk of losing its right to determine the location of certain land uses as a result of successful substantive validity challenges brought against it.

*2. Is a county ordinance that zones only a portion of unzoned county land unconstitutional because it prohibits off-site billboards?*

Carroll argues that the ordinance is unconstitutional on its face because it totally prohibits the use of billboards for off-site advertising. Initially, Carroll argues that when a party establishes that an ordinance effects a total ban of a particular use, the burden shifts to the governmental body to present evidence of a valid public purpose.

We begin this discussion with an examination of the interchange ordinance.

In testimony at one of the hearings before the board, the county zoning officer admitted that the county ordinance distinguishes between on-site "signage," which the ordinance permits, and commercial billboard advertising. Signs that businesses erect on-site are permitted. Section 1101.2 appears to allow limited off-site billboard advertising. The county zoning officer testified regarding that provision as follows:

Q. What is your distinction between the signs that are allowed and the signs that are prohibited?

A. We are permitting signs to be erected on properties where there is a business where there's advertising of the business on that site plus there's one other circumstance and that is where a business is located within the zoning area but is back from an intersecting road whereas a special exception and with the permission of the property owner a sign may be erected advertising that business that's not on site. Other than that, any other type of sign advertising any product or service or business that's not on the property would be billboards and they are not permitted in the area as of this time.

Carroll contends that the board and the trial court erred in concluding that, because the county has established only a few districts in which the use of off-site advertising is prohibited, the ordinance does not effect a total ban.

Carroll argues that, because the county has elected not to zone the entire county, the trial court and board erroneously concluded that the ordinance does not have to satisfy the same scrutiny as all other non-county municipal ordinances.

■ As indicated above, this court agrees with the county and the board that the MPC does not require counties to zone all areas within the county that are not already zoned by local municipalities. Based on the clear statutory language, Adams County has the authority to zone all or none of the land within the county that local municipalities have not zoned. Hence, this court concludes that the ordinance does not effect a total ban of off-site billboard advertising because there are areas within the county that are not covered by local zoning or by county zoning ordinances, and upon which Carroll could erect a billboard. Thus, the burden did not shift to the county to establish a reason for a total ban.

*3. Is the ordinance unconstitutional as applied?*

Carroll next argues that the ordinance prohibits off-site billboards in application and is therefore unconstitutional.

*Benham v. Board of Supervisors of Middletown Township*, 22 Pa.Commonwealth Ct. 245, 349 A.2d 484 (1975). Carroll contends that it has established that the ordinance effects a de facto ban, and that therefore the burden shifted to the county to establish a valid reason for the exclusion.

Carroll argues that the highway area in which it seeks to maintain its billboard is the only desirable location to place such signs. However, the ordinance does not effect a county-wide de facto ban merely because the area Carroll deems is the most desirable location for a billboard is not an area in which off-site billboards are permitted.

As indicated above, Carroll has the right to erect a billboard at any location in the county that is not covered by local or county zoning provisions.

4. *Is the ordinance unreasonable, arbitrary or discriminatory and lack a reasonable relationship to the safety, morals, health or general welfare of the community thus making it unconstitutional?*

██ Carroll contends that the ordinance's regulation of off-site advertising signs is unreasonable, arbitrary or discriminatory, and does not bear a reasonable relationship to the safety, morals, health or general welfare of the community and is therefore unconstitutional.

Carroll asserts that the county failed to present any evidence to contradict the evidence Carroll presented to establish that the restriction of signs to on-site advertising is not rationally related to a legitimate governmental concern.

However, the county did present the testimony of Richard Schmoyer, who indicated that the ordinance prevents the distraction of passing motorists and maintains the aesthetics of the area. Although Carroll is correct in asserting that the allowance of on-site advertising could have the same effect on motor vehicle safety and aesthetics as off-site advertising, the espoused governmental concerns are legitimate governmental interests, and the method by which

a municipality may foster those concerns is within its discretion. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

### 5. Does the ordinance violate the First and Fourteenth Amendments of the United States Constitution?

█ Finally, Carroll argues that the ordinance violates the First and Fourteenth Amendments of the United States Constitution. The county and the board assert that Carroll waived the issue because it did not raise the issue before the board or the trial court. Carroll's notice of appeal to the trial court and its brief did not include specific arguments raising either constitutional provisions. Therefore, Carroll has waived that issue.

Hence, this court will not reverse the trial court's decision on the basis of the First or Fourteenth Amendments.

Accordingly, the decision of the trial court is affirmed.

NOW, April 3, 1992, the order of the Court of Common Pleas of Adams County, dated April 15, 1991, at No. 90–S–969, is affirmed.