IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of 212 Wood Street, LLC:
from the Decision of the Upper Merion  :
Township Zoning Hearing Board  :
                      :  No. 1296 C.D. 2020
Appeal of:  212 Wood Street, LLC  :  Submitted: December 13, 2021


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  January 4, 2022


212 Wood Street, LLC (Landowner)[1] appeals from the November 19, 2020 order of the Court of Common Pleas of Montgomery County (trial court) affirming the adjudication by the Upper Merion Township (Township) Zoning Hearing Board (Board) denying Landowner's variance requests.  Upon review, we affirm.

## I. Background

Landowner acquired the subject property (Property)[2] in August 2016. *See* Board Decision, 8/21/18, Finding of Fact (F.F.) 18.d., Original Record (O.R.) at 1013. The Property spans approximately 13.91 acres and is located in the HR

---

[1] Landowner is a limited liability company owned by two individuals.  *See* Transcript of Testimony (T.T.), 5/16/18 at 9, Reproduced Record (R.R.) at 39a.

[2] The Property has no street address and is identified as Tax Parcel 58-00-15988-001.  *See* Board's Decision, 8/21/18 at 1, Original Record (O.R.) at 1013.

Residential District of the Township. F.F. 1-2. Landowner uses approximately 3.6 acres of the Property for the storage of construction equipment, such as trailers, tractor trailers, dumpsters, backhoes, bulldozers and front-end loaders. F.F. 18.h. Approximately 4 acres of the Property have been used twice per year since at least 1996 for parking during regattas and boating events held by the Upper Merion Boathouse, a rowing club. *See* Board Decision at 1, 8/21/18, O.R. at 1013; F.F. 18.m., 18.o. The premises on which the Upper Merion Boathouse is located is adjacent to the Property and is owned by the Township. F.F. 5.[3]

On November 10, 2017, a Township zoning officer issued Landowner a notice of violation of Section 165-48 of the Township's zoning ordinance (Zoning Ordinance),[4] which sets forth permitted uses of property located in the HR Residential District of the Township.[5] F.F. 10-11; *see also* T.T., 5/16/18 at 26-27, R.R. at 56a-57a. The notice of violation directed Landowner to remedy the cited zoning violation within 30 days by ceasing use of the Property as a storage yard for construction vehicles, equipment and materials, and further advised Landowner of the 30-day window to appeal to the Board. *See* F.F. 12-13; T.T., 5/16/18 at 25-26,

---

[3] The previous owner of the Property requested that the Township rezone the Property to "HR" and obtained preliminary approval to construct three high-rise apartment buildings, which were never built. *See* Transcript of Testimony (T.T.), 5/16/18 at 99-100, R.R. at 129a-30a; F.F. 3.

[4] The Zoning Ordinance, the full title of which is the "Upper Merion Township Zoning Ordinance of 1942, as Amended," is digitally accessible through the Township's website. *See* TOWNSHIP OF UPPER MERION, PA, MONTGOMERY COUNTY, available at https://ecode360.com/11658450 (last visited Dec. 29, 2021). Chapter 165, Article XI of the Zoning Ordinance is titled 'HR Residential Zoning.' However, the Zoning Ordinance does not provide the meaning of the acronym 'HR.'

[5] Property located in the HR Residential District may be used or occupied as a multifamily dwelling or a multifamily dwelling group; for municipal uses; and for various enumerated commercial uses, subject to certain restrictions. *See* Section 165-48 of the Zoning Ordinance; *see also* R.R. at 323a-24a.

2

R.R. at 55a-56a. On December 28, 2017, Landowner filed an untimely appeal from the notice of violation with the Board. F.F. 14. Landowner's appeal stated that use of the Property for "Construction Yard & Recreation" purposes began "[p]rior to 1983." Appeal, 12/28/17 at 2, R.R. at 4a. Landowner contended that the cited uses of the Property for storage and recreational purposes constituted legal nonconforming uses, as these uses "ha[d] been continuous since before the enactment of the HR Zoning District in 1983" and "[t]here has been no showing of [] abandonment of the [n]onconforming [u]ses[.]" *Id.* at 7, R.R. at 9a. In the alternative, Landowner requested use and dimensional variances from the requirements of Sections 165-48 (use regulations), 165-50 (density and yard regulations), 165-51 (off-street parking and loading) and 165-53 (screening by means of vegetative buffer) of the Zoning Ordinance in order to permit use of the Property for the storage of construction materials and heavy equipment, as well as for the recreational purposes of providing parking and storage for the boathouse located on the adjoining property. *Id.* at 8, R.R. at 10a. Landowner further asserted that he satisfied the requirements of variance by estoppel, and also that the Township was barred from enforcing its ordinance by application of the doctrine of laches. *Id.* at 8-9, R.R. at 10a-11a.

The Board held a public hearing on May 16, 2018. *See* T.T., 5/16/18 at 1-3, R.R. at 31a-33a. The Township presented the testimony of the zoning officer, who attested that he had been employed by the Township for roughly 25 years and that he was not aware of Landowner's use of the portion of the Property as a construction yard until immediately prior to issuing the notice of violation. F.F. 19 (citing T.T., 5/16/18 at 18, 135, R.R. at 48a, 165a). Landowner offered the testimony of three witnesses: Robert Ratoskey (Ratoskey), one of Landowner's members;

3

Bradford Grauel (Grauel), a licensed professional land surveyor; and Richard Schildt, a nearby property owner. F.F. 17. Ratoskey attested that the only vehicular access to the Property requires crossing a one-lane bridge in Bridgeport Borough. F.F. 18.a (citing T.T., 5/16/18 at 40, R.R. at 70a); *see also* T.T., 5/16/18 at 40, R.R. at 70a. Ratoskey stated Landowner has stored construction vehicles and equipment on the Property since 1995, prior to purchasing the Property. F.F. 18.i (citing T.T., 5/16/18 at 53-54, R.R. at 83a-84a). Ratoskey conceded that Landowner did not discuss the intended use of the Property as a construction yard with the zoning officer prior to purchasing the Property. F.F. 18.j (citing T.T., 5/16/18 at 103, R.R. at 133a). Ratoskey further conceded that Landowner was aware at the time of purchase that HR Residential District regulations did not permit use of the Property as a construction yard, and that Landowner did not obtain permits from the Township to enable such use. F.F. 18.k (citing T.T., 5/16/18 at 104, R.R. at 134a); F.F. 18.l (citing T.T., 5/16/18 at 101, R.R. at 131a). Ratoskey testified concerning Landowner's desire to expand recreational use of the Property to include a boat ramp for kayakers and parking for cars and food trucks associated with Bridgeport Borough's Twilight on the River event series. F.F. 18.q (citing T.T., 5/16/18 at 89-90, R.R. at 119a-20a). Ratoskey attested to Landowner's intended use of the Property for the proposed storage and recreational uses until it decides to develop multifamily dwellings on the Property. F.F. 18.t (citing T.T., 5/16/18 at 112-13, R.R. at 142a-43a). In addition, Ratoskey essentially requested that the Board approve an open-ended use variance, asserting that other potential recreational uses of the Property were "like a moving target," and expressing the desire to avoid "hav[ing] to come in for a special approval every single time" the need for a similar recreational use arose. F.F. 18.r.; T.T., 5/16/18 at 95, R.R. at 125a. Ratoskey testified further:

4

[Ratoskey:] [The present use of the Property] would be the primary [use] until such a later date if we could ever develop the property to do the 200 some [sic] units. If that would ever become possible. It just seems like it's a far way out because of the access and whatnot. Like that little one-lane bridge, that's actually Third Street, and that's owned by Bridgeport Borough. If they [sic] would ever come in and expand that bridge, possibly we could then have better access to be able to then build apartments. Ultimately, long term, I would like to be able to build apartments [on the Property].

[Board Chair:] So your long-term plan for the property brings you back into the HR definition.

[Ratoskey:] Yes.

[Board Chair:] With multi-family.

[Ratoskey:] Yes. That's why we weren't trying to rezone the property.

T.T., 5/16/18 at 113, R.R. at 143a.

Grauel testified that the density requirements of the Zoning Ordinance would permit a maximum of 236 residential units on the Property.[6] F.F. 18.s. (citing T.T., 5/16/18 at 119, R.R. at 149a). Grauel opined that the one-lane bridge would not support access to 236 units on the Property, as "[i]t just wouldn't pass muster in the land planning process from a safety standpoint[.]" *Id.* at 119-20, R.R. at 149a-50a. Grauel further opined that the large size, irregular shape and wooded areas of the Property constituted "unique physical features," yet conceded "[t]he only thing that would preclude [the P]roperty from being used as zoned would be access." *Id.*

---

[6] Grauel attested that with 17 multifamily dwelling units per acre permitted under the HR Residential District regulations of the Zoning Ordinance, the Property's approximately 14 acres would yield a maximum of 236 multifamily dwelling units. *See* T.T., 5/16/18 at 119, R.R. at 149a; *see also* Section 165-50(A) of the Zoning Ordinance (permitting "a density of not more than 17 dwelling units per developable acre").

at 120-21 & 125, R.R. at 150a-51a & 155a. Grauel maintained that Landowner sought the minimum variance necessary to permit reasonable use of the Property. *Id.* at 121, R.R. at 151a. Moreover, Grauel attested that Landowner did not create the hardship and that the proposed use would not alter the character of the neighborhood, hinder development of adjacent property or detrimentally affect the public welfare. *Id.* at 121-22, R.R. at 151a-52a.

Schildt testified in his capacity as a neighboring landowner that Landowner has improved the appearance of the Property by removing trash, tires and debris. *Id.* at 130, R.R. at 160a. Schildt further asserted that use of the Property as a construction yard would not alter the essential character of the neighborhood, and that the proposed recreational uses would in fact enhance the area. *Id.* at 132, R.R. at 162a.

The Board held another hearing on July 18, 2018, at which Ratoskey again testified on behalf of Landowner. *See* T.T., 7/18/18 at 1-3, R.R. at 207a-09a. Ratoskey reiterated Landowner's "future goal" of developing high-rise apartment buildings on the Property "if everything else could get worked out," further specifying that such a scheme was "years and years away, if ever." T.T., 7/16/18 at 62, R.R. at 268a. Ratoskey also testified regarding Landowner's requested use of the Property for parking and storage associated with a proposed rowing dock and as a training area for Greater Philadelphia Search and Rescue. F.F. 18.q. (citing T.T., 7/18/18 at 19-20, 26-27 & 44, R.R. at 225a-26a, 250a & 232a-33a).

The Board voted unanimously to deny Landowner's appeal and variance requests, mailing Landowner notice of its decision the following day. Board's Decision, 8/21/18 at 20, Conclusion of Law (C.L.) 20. On August 21, 2018, the Board issued a decision expounding upon its denial. *See* Board Decision,

6

8/21/18 at 1-23, O.R. at 1013-35. The Board explained that it lacked jurisdiction over Landowner's untimely appeal, as the 30-day appeal period is not subject to waiver or modification. C.L. 5, O.R. at 1032.[7] In regard to the variance requests, the Board concluded that Landowner failed to demonstrate unnecessary hardship on the basis of unique physical characteristics or conditions of the Property, or that the Property could not be developed in conformity with the Zoning Ordinance. C.L. 7-8. The Board also rejected Grauel's assertion that limited access to the Property afforded by the one-lane bridge precluded development of multifamily dwellings on the Property, citing Ratoskey's testimony regarding Landowner's intention to develop multifamily dwellings on the Property:

> [The Board]: The question is, are you willing to live by the idea that you could use this only for the purpose it's being used for now, period?
>
> [] Ratoskey: Besides what it is zoned for, you mean? Like, it's zoned for High Rise Residential. That would be the future goal, to develop it in that fashion, if everything else could get worked out.

Board's Decision, 8/21/18 at 14, O.R. at 1026 (quoting T.T., 7/18/18 at 62, R.R. at 268a); *see also* Board's Decision, 8/21/18 at 11 n.6, O.R. at 1023. Thus, the Board reasoned that "[i]f Landowner intends to develop the Property in conformity with the Zoning Ordinance at some later date, the requested variances are not necessary for the reasonable use of the Property," as "the Property can presently be developed in conformity with the Ordinance." *Id.* Further, the Board noted that although Landowner's attorney maintained that access was insufficient "to support the use

---

[7] Section 914.1(b) of the Pennsylvania Municipalities Planning Code (MPC) provides that "[a]ll appeals from determinations adverse to the landowners shall be filed by the landowner within 30 days after notice of the determination is issued." Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, 53 P.S. § 10914.1(b).

7

density [that is] permitted under the ordinance," Landowner failed to address the feasibility of either improving access or opting to develop lower density multifamily development. *Id.* (quoting T.T., 7/18/18 at 73, R.R. at 279a). Moreover, the Board reasoned that Landowner "undercut" his argument regarding insufficient access by proposing additional uses for the Property that would generate traffic from heavy construction equipment and vehicles, hundreds of regatta and rowing practice participants and attendees, food trucks and attendees for the Twilight on the River event series and vehicles associated with search and rescue training. *Id.* at 14-15, O.R. at 1026-27.

The Board also noted that Landowner failed to demonstrate that current HR Residential District regulations created an unnecessary hardship. *Id.* at 15, O.R. at 1027. The Board reasoned that "[t]he marked changes in use" requested by Landowner would be effected "more appropriately" through legislative relief, as granting the requested variances would be "tantamount to a rezoning of the Property." *Id.* The Board determined that "Landowner provided scant details or limitations on the wide variety of uses it intended to conduct on the Property," highlighting Ratoskey's description of certain of the proposed uses as a "moving target," to encompass any prospective purpose that "might be of use to [the P]roperty." *Id.* at 16, O.R. at 1028 (quoting T.T., 5/16/18 at 95, R.R. at 125a). Thus, the Board concluded that Landowner failed to establish that the requested variances were necessary to permit reasonable use of the Property, constituted the minimum necessary to afford relief and would not be detrimental to the public welfare. *Id.*; C.L. 8-10.

The Board also determined that Landowner failed to demonstrate entitlement to a variance by estoppel or that application of the doctrine of laches

8

precluded the Township's enforcement of its zoning ordinance with respect to the contested violations. C.L. 11-19. Further, the Board noted that "[n]o evidence was presented in support of the array of variance requests other than the use of the Property." F.F. 21.

Landowner appealed to the trial court,[8] which denied Landowner's appeal and affirmed the Board's ruling by order dated November 19, 2020. *See* Trial Court Order, 11/19/20, R.R. at 530a. Landowner thereafter appealed to this Court.

## II. Issues

On appeal,[9] Landowner characterizes his arguments as asserting errors of law and/or abuses of discretion by the Board. Landowner argues the Board "mischaracterized" Ratoskey's testimony concerning his future plans for the Property and then erroneously relied on that mischaracterization in rejecting Ratoskey's testimony as not credible. Landowner argues that it "presented ample testimony and exhibits" at the hearings before the Board, and that "[t]he Board's

---

[8] The trial court initially remanded the matter to the Board to hold a public hearing regarding the validity of the zoning officer's notice of violation. *See* Board's Supplemental Decision, 7/9/19 at 1, R.R. at 520a. Following the remand hearing, the Board rendered a decision concluding that Landowner failed to establish that Landowner's use of the Property as a construction yard and for various recreational purposes constituted legally nonconforming uses. *See id.* at 10, Conclusion of Law 5, R.R. at 529a. On August 7, 2019, Landowner filed a supplemental notice of appeal with the trial court. *See* Third Supplemental Notice of Appeal, R.R. at 339a.

[9] "Because the parties presented no additional evidence after the Board's decision, our review is limited to determining whether the Board committed an abuse of discretion or an error of law." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (citing *Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 689 A.2d 225 (Pa. 1997)). "An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence." *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996). Further, "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in zoning matters." *Taliaferro*, 873 A.2d at 815.

9

findings ignored substantial evidence in denying the [requested] variances[.]" Landowner's Br. at 16 and 18.

Specifically, Landowner contends that "contrary to the Board's assertion in . . . Finding of Fact 18.t[.]" that Landowner seeks to continue using the Property for storage and recreational purposes "until" it develops multifamily dwellings on the Property, Ratoskey in fact testified that Landowner would discontinue the present use of the Property "if" it decides to pursue this development scheme. *Id.* at 18-19. Thus, Landowner asserts the Board erroneously discredited Ratoskey's testimony "*by ignoring* [his] use of the word 'if,'" such that "Ratoskey's testimony is far from the mischaracterization provided by the Board[.]" *Id.* at 19. Landowner, therefore, maintains that the Board's decision to discredit Ratoskey's testimony is mere "conjecture" that is unsupported by the record. *Id.* at 19-20.[10]

Landowner also contends that the Board's mischaracterization of Ratoskey's testimony constitutes the capricious disregard of evidence, as the Board deliberately and baselessly disregarded apparently reliable, relevant and competent evidence. *Id.* at 20 (citing *Taliaferro*). Further, Landowner asserts that this purported mischaracterization formed the basis for its erroneous decision to reject Grauel's expert testimony. *Id.* at 19-20. Moreover, Landowner maintains that the Board failed to accord sufficient weight to Grauel's testimony that the limited access to the Property by means of the one-lane bridge, coupled with the Property's large size, irregular shape and densely vegetated areas of the Property, would hinder the

---

[10] We note that the Board did not specifically discredit Ratoskey's testimony in its August 21, 2018 decision. Rather, the Board noted that it did not find Grauel's testimony credible "based on [] Ratoskey's testimony about [Landowner's] intention to develop the Property for multifamily dwellings at some future time." Board's Decision, 8/21/18 at 11, O.R. at 1023.

development of multifamily dwellings.  *Id.*[11]  Thus, Landowner contends that the Board's denial of the requested variances "is based on unsupported conjecture," and "cannot stand."[12]  *Id.*  Landowner, therefore, requests that this Court overturn the Board's "capricious and erroneous" credibility determinations and reverse the trial court's affirmance of the Board's denial of the requested variances.  *Id.* at 20-22.

The Township and the Board jointly submitted an appellate brief advocating for affirmance of the trial court's November 19, 2020 order.

## III. Discussion

Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC)[13] provides, in relevant part:

> (a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:
>
> > (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the

---

[11] We note Grauel's testimony that although the large size, irregular shape and wooded areas of the Property constituted "unique physical features[,] . . . [t]he only thing that would preclude [the P]roperty from being used as zoned would be access."  T.T., 5/16/18 at 120-21 & 125, R.R. at 150a-51a & 155a.

[12] Landowner contends that the Board based its denial of the variances on its misconstrual of Ratoskey's testimony regarding Landowner's intention to develop the Property as a permitted use, specifically multifamily dwellings.  Landowner's Br. at 11.  Landowner similarly asserts that the Board denied the variances based on incorrect credibility determinations.  *Id.* at 13.

[13] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

11

circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a), added by the Act of December 21, 1988, P.L. 1329f.

Variances should be granted sparingly and only under exceptional circumstances. *O'Neill v. Zoning Bd. of Adjustment*, 254 A.2d 12 (Pa. 1969). The burden on a landowner seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling. *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 39-40 (Pa. Cmwlth. 2011) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983)).

Unnecessary hardship can be established by either (1) showing that the physical characteristics of the property are such that it could not be used for a

permitted use or that the physical characteristics were such that it could only be arranged for such purpose at a prohibitive expense, or (2) proving that the characteristics of the area were such that the lots had either no value or only a distress value for any purpose permitted by the zoning ordinance. *Id.* "The applicant must show the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district." *Taliaferro*, 873 A.2d at 812.

Here, we agree with the Board that Landowner failed to establish entitlement to the requested use variances. An applicant for a variance must establish that because of "unique physical circumstances or conditions . . . peculiar to the particular property . . . *there is no possibility* that the property can be developed in strict conformity with the provisions of the zoning ordinance," such that the requested "variance is therefore necessary to enable the reasonable use of the property." *See* Section 910.2(a)(1), (2) of the MPC, 53 P.S. § 10910.2(a)(1), (2) (emphasis added). Landowner contends the Board mischaracterized Ratoskey's testimony as evidencing a concrete intention to develop multifamily dwellings. According to Landowner, the Board focused on Ratoskey's use of the word "until," as opposed to a conditional, tentative plan to develop the Property in conformity with the Zoning Ordinance contingent on surmounting various obstacles, as indicated by Ratoskey's qualification of his statements with the word "if." Thus, Landowner essentially asserts that the Board construed Ratoskey's testimony as a concession regarding the feasibility of using the Property in conformance with the Zoning Ordinance. However, even accepting Landowner's construal of Ratoskey's testimony as expressing uncertainty concerning future development of the Property, Ratoskey's concession of the *possibility* of developing the Property in conformance

13

with the Zoning Ordinance alone would defeat Landowner's use variance requests. *See id.*

Moreover, we see no reversible error in the Board's interpretation of Ratoskey's testimony. "On review an appellate court may not substitute its interpretation of the evidence for that of the [zoning hearing b]oard." *Vanguard Cellular Sys., Inc. v. Zoning Hearing Bd. of Smithfield Twp.*, 568 A.2d 703 (Pa. Cmwlth. 1989). Here, we discern neither an abuse of discretion nor an error of law in the Board's interpretation of Ratoskey's testimony. The Board cited the apparent inconsistencies between the testimony of Ratoskey and Grauel in finding that "the Property can *presently* be developed in conformity with the Ordinance." Board's Decision, 8/21/18 at 14, O.R. at 1026. We are, therefore, bound by the Board's finding. *See Macioce v. Zoning Hearing Bd. of the Borough of Baldwin*, 850 A.2d 887 n.9 (Pa. Cmwlth. 2004) ("[A]ssuming that the record demonstrates the existence of substantial evidence, the Court is bound by the findings of fact made below which are the result of resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence.").

Landowner similarly asserts that the Board's erroneous construal of Ratoskey's testimony formed the basis for its decision to reject Grauel's testimony and, therefore, requests that this Court overturn the Board's credibility determination. "In zoning cases it is well-settled that the [zoning hearing b]oard is the fact finder, with exclusive province over matters of credibility and weight to be afforded the evidence." *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of City of Phila.*, 815 A.2d 652, 658 (Pa. Cmwlth. 2002) (citations omitted); *see also Taliaferro*, 873 A.2d at 811 ("The [zoning hearing] board is the sole judge of the credibility of witnesses and the weight afforded their testimony.").

14

"[T]his Court will not engage in fact finding or disturb the [zoning hearing b]oard's credibility determinations on appeal." *Manayunk Neighborhood Council*, 815 A.2d at 658; *see also In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2006) ("A reviewing court must accept the credibility determinations made by the municipal body which hears the testimony, evaluates the credibility of the witnesses and serves as fact finder."). A zoning board is free to reject even uncontradicted testimony it finds lacking in credibility, including testimony offered by an expert witness. *Nettleton v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003). "[A] court will overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *See Whitacker-Reid v. Pottsgrove Sch. Dist., Bd. of Sch. Dirs.*, 160 A.3d 905, 916 (Pa. Cmwlth. 2017) (quotation marks omitted).

Here, the Board explained that it discredited Grauel's testimony "that due to safety concerns about the one-lane bridge, the Property cannot be developed for multifamily residential dwellings" on the basis of "Ratoskey's testimony about [Landowner's] intention to develop the Property for multifamily dwellings at some future time." Board's Decision, 8/21/18 at 11, O.R. at 1023. The Board further noted that Landowner's evidence failed to address either the feasibility of expanding access or whether the current level of access would support development of a lesser number of multifamily dwelling units on the Property. *See id.* at 14, O.R. at 1026. Thus, Landowner failed to establish that the Board's decision to discredit Grauel's testimony was "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *See Whitacker-Reid*, 160 A.3d at 916. Likewise, we are unpersuaded by

15

Landowner's assertion that the Board failed to accord sufficient weight to Grauel's testimony. *See Manayunk Neighborhood Council*, 815 A.2d at 658; *Spargo v. Zoning Hearing Bd. of the Mun. of Bethel Park*, 563 A.2d 213, 2018 (Pa. Cmwlth. 1989) ("It is the function of a zoning hearing board to weigh the evidence before it.").

Landowner also maintains that the Board's purported mischaracterization of Ratoskey's testimony constituted the capricious disregard of evidence. We disagree. "A capricious disregard occurs only when the fact-finder deliberately ignores relevant, competent evidence. Capricious disregard of evidence is a deliberate and baseless disregard of apparently reliable evidence." *Taliaferro*, 873 A.2d at 814 (citations omitted). Here, the Board acknowledged Ratoskey's assertion that developing multifamily dwellings on the Property was "the future goal . . . if everything else could get worked out." Board's Decision, 8/21/18 at 14, O.R. at 1026 (quoting T.T., 7/18/18 at 62, R.R. at 268a). Thus, "the Board considered "[the disputed] testimony, and chose to reject it. The express consideration and rejection of [] evidence, by [] definition, is not capricious disregard." *Taliaferro*, 873 A.2d at 815-16 (reasoning that "application of the capricious disregard standard . . . [did not] warrant reversal" where "[t]he Board's decision plainly demonstrate[d] it did not deliberately ignore the [disputed] testimony . . ., as evidenced by its express summation of [the] testimony").

We, therefore, agree with the Board that Landowner failed to prove that HR Residential District regulations create an unnecessary hardship, or to demonstrate any of the other prerequisites for establishing entitlement to the requested use variances. *See Zaruta v. Zoning Hearing Bd. of City of Wilkes-Barre*, 543 A.2d 1282, 1284 (Pa. Cmwlth. 1988) (reversing decision of zoning hearing

16

board to grant requested use variance, where "review of the record indicate[d] that [applicant] failed to meet the high standards of proof necessary to obtain a use variance" and the "findings of fact [did] not include any findings regarding unique physical characteristics of the property resulting in unnecessary hardship, or that a variance would be necessary to enable reasonable use of the property, or any of the other requirements delineated in MPC section 912"). Thus, we agree with the Board that Landowner fails to meet the heavy burden of establishing that exceptional circumstances and substantial, serious and compelling reasons warrant granting the requested use variances. *See Bawa Muhaiyaddeen Fellowship*, 462 A.2d at 639.

### IV. Conclusion

Based on the foregoing discussion, the trial court's order is affirmed.


_____
CHRISTINE FIZZANO CANNON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of 212 Wood Street, LLC :
from the Decision of the Upper Merion  :
Township Zoning Hearing Board       :
                                    :   No. 1296 C.D. 2020
Appeal of:  212 Wood Street, LLC    :

# O R D E R

AND NOW, this 4th day of January, 2022, the November 19, 2020 decision of the Court of Common Pleas of Montgomery County is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge