IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.W., a minor by his parent  :
and guardian, H.W.  :
  :
  v.  :
  :
Avonworth School District,  : No. 1199 C.D. 2022
  Appellant  : Submitted: May 8, 2023


BEFORE: HONORABLE ANNE E. COVEY, Judge
   HONORABLE ELLEN CEISLER, Judge
   HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION BY
JUDGE COVEY       FILED: June 2, 2023


  Avonworth School District (School District) appeals from the Allegheny County Common Pleas Court's (trial court) October 3, 2022 order sustaining the appeal by G.W. (Student), a minor, by his parent and guardian, H.W. (Father), and reversing the School District Board of Directors' (Board) adjudication that Student was not a School District resident. Essentially, the School District presents four issues for this Court's review: (1) whether the School District or Student had the burden of proving Student's non-residency; (2) whether the trial court erred by reopening the record; (3) whether substantial evidence supported the Board's adjudication; and (4) whether the trial court erred by reversing the Board's adjudication without conducting a hearing.[1] After review, this Court affirms.

  Father enrolled Student in the School District in 2016. During the 2021-2022 school year, Student attended the technical school at A.W. Beattie Career Center (Career Center) in the mornings, and participated in the School District's

---

[1] This Court has consolidated and renumbered the School District's issues for ease of discussion. *See* School District's Br. at 5.

classes by cyber school in the afternoons.[2]  Father and Student's mother, J.W. (Mother), are separated.  Father resides at 8228 Ohio River Boulevard, Apartment 46, Emsworth, Pennsylvania, which is in the School District.  Mother resides at 101 Marie Avenue, Avalon, Pennsylvania, which residence is jointly owned by Father and Mother, and located in the Northgate School District.  Father and Mother have a verbal agreement regarding their custody of Student and his sister.  *See* Original Record, Mother's 7/19/2022 Notes of Testimony (N.T.) at 24.

In the fall of 2021, the School District received a tip from a community member that Student did not reside within the School District's boundaries.  As part of its investigation into Student's residency status, the School District hired CSI Investigation Risk Management (CSI) to conduct surveillance.  CSI's surveillance consisted of observing Mother's address in the early morning hours of Friday, October 15, Monday, October 18, Thursday, October 21, Wednesday, October 27, Friday, October 29, Thursday, November 4, and Wednesday, November 10, 2021. *See* Reproduced Record (R.R.) at 109a-113a.  According to CSI, on each of those occasions, Student exited Mother's residence between 7:14 a.m. and 7:21 a.m. and entered a black sport utility vehicle operated by a female and registered to Mother. *See id*.; *see also* N.T. at 20.  CSI investigator John Oldham (Investigator) admitted that he did not determine whether there was a street or alley behind Mother's residence, whether there was an entrance/exit door on the other side of Mother's house, or whether anyone entered or exited from another side of Mother's house. *See* R.R. at 33a, 43a-44a.  Investigator did not conduct surveillance in the afternoon to determine whether Student returned to Mother's residence.  *See* R.R. at 38a. Investigator added that he was not asked to conduct surveillance at Father's residence. *See* R.R. at 35a.

---

[2] At that time, Student was a junior in high school.  *See* Reproduced Record at 15a.

2

On November 11, 2021, the School District sent a notice to Father informing him that it had determined that Student had been living with Mother in the Northgate School District and, thus, Student was not a School District resident entitled to a free public education therein (Notice). *See* R.R. at 103a-104a. The Notice further informed Father of his right to a Board hearing. Father requested a Board hearing, which was conducted before a Hearing Officer on February 8, 2022. *See* R.R. at 4a-89a, 106a.

At the hearing, the School District presented Investigator's testimony regarding CSI's surveillance, and the Career Center's attendance records showing that Student attended school each of the days Investigator observed him exiting Mother's residence. *See* R.R. at 19a-46a, 48a-50a. The School District also presented the testimony of Superintendent Jeff Hadley, Ph.D. (Dr. Hadley), who recalled that he met with Father and Mother on January 6, 2022, and he "hear[d] [Mother] make the statement that [Student] has been staying with her at Marie Avenue." R.R. at 50a. Dr. Hadley did not ask Mother to clarify her statement. *See* R.R. at 52a.

Student presented Father's testimony. Father did not dispute Dr. Hadley's recollection of Mother's statement, and even added that Student "splits time between [Father's] residence and [] [M]other's residence . . . ." R.R. at 71a. When asked: "Does [Student] stay with you at your apartment in Emsworth?" Father responded: "Sometimes, yes." R.R. at 71a. Father described that Student has his own room at each residence. *See* R.R. at 72a. Father added that when Student stays with him, he drops Student off at the rear of Mother's residence between 5:30 a.m. and 6:00 a.m. and picks up his tools/materials before continuing to work at G&J

3

Waterproofing a block away.[3, 4] *See* R.R. at 68a-69a. After reviewing the surveillance video, Father declared: "[I]t is possible one or two of these [dates, Student] stayed at [] [M]other's, but the majority of the time [wa]s because he [wa]s coming through the back" of Mother's residence. R.R. at 78a; *see also* R.R. at 80a.

On February 14, 2022, the Board held that the School District had met its burden of proving that Student lived with Mother and, thus, was not a School District resident, and Father failed to prove otherwise. *See* R.R. at 133a-140a. Accordingly, the Board held that the School District was not obligated to provide Student a free public education.

On March 14, 2022, Student appealed to the trial court. On April 4, 2022, the parties jointly stipulated that Student would continue to attend school in the School District pending resolution of the appeal. *See* R.R. at 152a-154a. On May 6, 2022, the trial court conducted a conference. On May 27, 2022, the trial court ordered that the parties may depose Mother and thereafter file briefs, which they did.[5]

On October 3, 2022, the trial court sustained Student's appeal, stating, in pertinent part:

> 1. No surveillance was conducted on any back or side entrance to Mother's residence, no surveillance was done of Mother's residence at any time during the school day or after school, and no surveillance at all was done at Father's residence[.]

---

[3] Over the School District's objection, the trial court gave Student's counsel latitude to allow Father's brief explanation that, based on a school counselor's recommendation regarding Student's past self-destructive behavior, Father and Mother make it a point not to leave Student alone. *See* R.R. at 62a, 64a-65a, 72a-73a.

[4] Father presented two additional pieces of evidence that the Board declined to admit into the record because one was irrelevant and the other was not authenticated and could not be cross-examined.

[5] Student conducted Mother's deposition on July 19, 2022, over the School District's objection.

2. Dr. Hadley testified that Mother told him that [Student] was "staying" with her, but had no details about what "staying" meant with regard to how much time [Student] was spending at [] [M]other's house[.]

3. The [H]earing [O]fficer determined that the School District had the burden of proof in this case . . . , which was not disputed by the [S]chool [D]istrict[.]

4. Therefore, [the trial court] find[s] that the School District did not offer substantial evidence that [Student] lives more than 50% of the time with [] [M]other[.]

Trial Ct. 10/3/2022 Order at 1 (R.R. at 246a-247a).

The School District appealed to this Court.[6] On October 31, 2022, the trial court ordered the School District to file a concise statement of the errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), which the School District did. On December 19, 2022, the trial court filed its opinion pursuant to Rule 1925(a) (1925(a) Opinion).

---

[6] A school board is a local agency and its "final decision . . . is an adjudication subject to review by this Court pursuant to Section 754 of the [Local] Agency Law, 2 Pa. C.S. § 754." *Monaghan v. Bd. of Sch. Dir[s.] of Reading Sch. Dist.*, . . . 618 A.2d 1239, 1241 ([Pa. Cmwlth.] 1992) (footnote omitted). Here, [the trial court] did not take any additional evidence and, therefore, we apply the well-settled principle []:

> [W]here a local agency develops a complete record and [the trial court] takes no additional evidence, our scope of review is limited to whether the local agency's adjudication violated appellant's constitutional rights, committed [an] error of law or violated provisions of the local agency law, or made findings of fact necessary to support its adjudication which were not supported by substantial evidence.

*Id.*

*Whitacker-Reid v. Pottsgrove Sch. Dist., Bd. of Sch. Dirs.*, 160 A.3d 905, 912 n.13 (Pa. Cmwlth. 2017).

Initially, Section 1302(a) of the Public School Code of 1949 (School Code),[7] which sets forth the residency requirements for free attendance at public schools, declares, in relevant part: "A child shall be considered a resident of the school district in which his parents or the guardian of his person resides." 24 P.S. § 13-1302(a).

> "Residence" for the purpose of Section 1302(a) [of the School Code] is "a factual place of abode evidenced by a person's physical presence in a particular place," but it does not have to be the person's principle residence or domicile. [*In re Residence Hearing Before Bd. of Sch. Dirs.,*] *Cumberland Valley* [*Sch. Dist.*], 744 A.2d [1272,] 1274-75 [(Pa. 2000)]. The purpose of Section 1302(a) [of the School Code] is to prevent "school shopping." *Paek* [*v. Pen Argyl Area Sch. Dist.*], 923 A.2d [563,] 567 [(Pa. Cmwlth. 2007)][.]

*Whitacker-Reid v. Pottsgrove Sch. Dist., Bd. of Sch. Dirs.*, 160 A.3d 905, 916 (Pa. Cmwlth. 2017).

Section 11.11(a)(1) of the Pennsylvania Department of Education's (Department) Regulations instructs, in pertinent part:

> When the parents reside in different school districts due to separation, divorce or other reason, the child may attend school in the district of residence of the parent with whom the child lives for a majority of the time, unless a court order or court approved custody agreement specifies otherwise. If the parents have joint custody and time is evenly divided, the parents may choose which of the two school districts the child will enroll for the school year.[8]

22 Pa. Code § 11.11(a)(1).

The School District argues that the trial court erred by first concluding that the School District had the initial burden of proving Student's non-resident

---

[7] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

[8] Student in this case did not argue that Father and Mother "have joint custody and the time is evenly divided[.]" 22 Pa. Code § 11.11(a)(1).

status, then declaring in its 1925(a) Opinion that Student had the burden of proving his non-residency.[9]

Although the *Whitacker-Reid* Court observed that "[t]he precedent in these matters is not clear on which party bears the burden of proof[,]" *id*. at 917 n.18, the issue was waived in that case. This Court observes that Section 11.11(b) of the Department's Regulations requires parents and guardians to supply proof of a student's residency *at enrollment*. *See* 22 Pa. Code § 11.11(b) ("The school district . . . has no obligation to enroll a child until the parent, guardian or other person . . . making the application has supplied proof of the child's age, residence, and immunizations as required by law."). Moreover, this Court has ruled that "'[t]he *sole* purpose [of a residency hearing is] to ensure that sufficient evidence exist[s] to *substantiate* [*a school district's*] *determination* that [the parents] were not residents' of the school district." *Whitacker-Reid*, 160 A.3d at 916 (quoting *Cumberland Valley, Behm v. Wilmington Area Sch. Dist.*, 966 A.2d 60, 66 (Pa. Cmwlth. 2010) (emphasis added)).

Further, in *H.R. v. Shaler Area School District* (Pa. Cmwlth. No. 1008 C.D. 2020, filed Jan. 5, 2022),[10] this Court concluded:

---

[9] Student retorts that the School District waived this argument. However, it appears that the School District's challenge is that the trial court declared in its October 3, 2022 order that the School District had the burden of proof at the residency hearing, but then held in its December 21, 2022 1925(a) Opinion that Student had the burden. Because the School District could not have made that argument before the trial court issued its 1925(a) Opinion, the School District did not waive the argument by not raising it earlier. Further, this Court observes that, in the October 3, 2022 order, the trial court made a *finding* that the Hearing Officer placed the burden on the School District at the residency hearing, rather than a *ruling* that the School District had the burden. Thereafter, in its 1925(a) Opinion, the trial court concluded that Student had the initial burden of proving residency at enrollment, leaving the School District with the burden at the residency hearing. Thus, the trial court's October 3, 2022 order and 1925(a) Opinion were consistent.

[10] Unreported decisions of this Court, while not binding, may be cited for their persuasive value. Section 414(a) of the Internal Operating Procedures of the Commonwealth Court, 210 Pa. Code § 69.414(a). *H.R.* is cited herein for its persuasive value.

7

In a Section 1302(a) [of the School Code] case, the parent has the initial burden of proof, which may be satisfied by the presentation of evidence sufficient to satisfy the enrollment requirements for a child in the [school] district. *Whitacker-Reid*, 160 A.3d at 917. Then, the burden shifts to the school district. *Id*. Specifically, the school district must substantiate its determination that the parent or guardian does not reside in the school district. *Id*.

*H.R.*, slip op. at 12. Accordingly, the trial court properly held that a parent or guardian's initial burden of proof is satisfied when a school district accepts a student's enrollment application and, thereafter, the school district has the burden of proving that the student does not reside therein. *See* 22 Pa. Code § 11.11(b); *see also* Trial Ct. 1925(a) Op. at 5-6.

Here, the parties stipulated that Father enrolled Student in 2016 using Father's address, which is in the School District. *See* R.R. at 60a-61a, 74a. The School District could have declined to enroll Student if his residency was unclear at that time. *See* 22 Pa. Code § 11.11(b). When the School District thereafter challenged Student's residency, the School District had the burden to show that Student was no longer a School District resident. *See H.R.* Accordingly, the Hearing Officer properly concluded at the February 8, 2022 Board hearing that "the [School District] ha[d] the burden" to show that Student was no longer a School District resident. R.R. at 82a.

The School District next asserts that the trial court erred by reopening the record. Section 754 of the Local Agency Law declares:

**(a) Incomplete record.--**In the event a full and complete record of the proceedings before the local agency was not made,[11] the court may hear the appeal *de novo*, or may

---

[11] This Court has described:

Situations in which a record has been deemed incomplete include such instances where the record fails to contain a transcript of the proceedings before the local agency, [*see*] *McLaughlin v. C*[*tr.*]

8

remand the proceedings to the agency for the purpose of making a full and complete record or for further disposition in accordance with the order of the court.

**(b) Complete record.**--In the event a full and complete record of the proceedings before the local agency was made,[12] the court shall hear the appeal without a jury on the record certified by the agency. After hearing[,] the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 [of the Local Agency Law] (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may enter any order authorized by [Section 706 of the Judicial Code,] 42 Pa.C.S. § 706 (relating to disposition of appeals).

2 Pa.C.S. § 754 (italic text emphasis added).

This Court has defined a "full and complete record" as "a complete and accurate record of the testimony taken so that the appellant is given a base upon which he may appeal and, also, that the appellate court is given a sufficient record upon which to rule on the questions

---

*C*[*nty.*] *Hous*[.] *Auth*[.], . . . 616 A.2d 1073 ([Pa Cmwlth.] 1992), or where a party refuses to provide relevant and necessary documentation to the local agency, [*see*] *Sch*[.] *Dist*[.] *of the City of Erie v. Hamot Med*[.] *C*[*tr.*], . . . 602 A.2d 407 ([Pa. Cmwlth.] 1992). However, "[t]he record before the local agency is not considered incomplete based solely on [a party's] failure to present evidence available at the hearing." [*Ret. Bd. of Allegheny Cnty. v.*] *Colville*, 852 A.2d [445,] 451 [(Pa. Cmwlth. 2004)]. Indeed, in *Colville*, we stated that "[t]he trial court has no authority under [S]ection 754(b) of the Local Agency Law to remand a matter to the local agency to give the appellant another opportunity to prove what he or she should have proved in the first place." *Id*. (citations omitted).

*Kuziak v. Borough of Danville*, 125 A.3d 470, 475-76 (Pa. Cmwlth. 2015) (footnote omitted).

[12] The School District objected to Mother's deposition on the basis that the Board's record was complete under the Local Agency Law. *See* Original Record, Confidential Record Ex. B, Mother's July 19, 2022 N.T. at 6.

9

presented." *In re Thompson*, 896 A.2d 659, 668 (Pa. Cmwlth. 2005)[.]

*Ray v. Civ. Serv. Comm'n of Borough of Darby*, 131 A.3d 1012, 1019 (Pa. Cmwlth. 2016). "The adequacy of the local agency's record is a matter committed to the discretion of the trial court." *Kuziak v. Borough of Danville*, 125 A.3d 470, 476 n.3 (Pa. Cmwlth. 2015).

> Here, the trial court explained:

> A record may be reopened where the evidence has been omitted by "accident, inadvertence, or even because of mistake as to its necessity," "it is desirable that further testimony be taken in the interest of a more accurate adjudication," and "an honest purpose would be justly served without unfair disadvantage." *In re J.E.F.*, [409 A.2d 1165, 1167] (Pa. 1979), internal citations omitted. The decision to reopen the record is "peculiarly within the sound discretion of the trial court. . . ." *Id.* at [1166]. In this case[,] the parties made a mistake as to the necessity of [M]other's testimony because they could not have predicted the weight that the fact[-]finder would give to her out[-]of[-]court statement. [The trial court] believed that deposition testimony from Mother would help [it] to make a more accurate adjudication because Mother's statements regarding how much [Student] stayed at her house is a central question. The honest purpose of giving a more clear picture of the time [Student] spends with each parent is served by this testimony. There is no unfair disadvantage as both parties were able to question Mother at the deposition. Therefore, the addition of Mother's testimony to the record meets the necessary factors and [the trial court] committed no error.

Trial Ct. 1925(a) Op. at 2-3. Although the trial court's reasoning is well taken, the *J.E.F.* case upon which the trial court relied involved a trial court reopening its *own* record, not that of the fact-finding local agency and, thus, is inapposite.

In addition, the 1925(a) Opinion reflects that the trial court reviewed this matter pursuant to Section 754(b) of the Local Agency Law. *See* Trial Ct.

1925(a) Op. at 3. Unlike Section 754(a) of the Local Agency Law,[13] under Section 754(b) of the Local Agency Law, reopening the Board's record to accept new evidence after the Board rendered its decision was not among the actions the trial court could take. *See* 2 Pa.C.S. § 754(b). Therefore, the trial court should not have permitted the parties to take Mother's deposition. Notwithstanding, despite the trial court's anticipation that Mother's testimony "would help [the trial court] to make a more accurate adjudication[,]" neither the trial court's October 3, 2022 order[,] nor its 1925(a) Opinion reference Mother's deposition testimony, or reflect that the trial court actually relied on Mother's testimony in making its ruling.[14] Trial Ct. 1925(a) Op. at 3. Thus, any error the trial court committed by authorizing the deposition was harmless.

The School District also contends that the trial court erred by concluding that the Board's adjudication was not supported by substantial evidence.[15] Specifically, the School District argues that the trial court erred by

---

[13] Had the trial court determined the Board's record was incomplete without Mother's testimony, and reviewed the matter under Section 754(a) of the Local Agency Law, it could possibly have conducted a *de novo* review of the Board's record supplemented with Mother's deposition. *See W. Chester Area Sch. Dist. v. Collegium Charter Sch.*, 812 A.2d 1172 (Pa. 2002) (*de novo* review may consist of a school board's record and additional testimony); *see also Goodfellas, Inc. v. Pa. Liquor Control Bd.*, 921 A.2d 559 (Pa. Cmwlth. 2007) (on *de novo* review, the trial court may accept the agency record plus new evidence).

[14] Even if the trial court considered Mother's deposition testimony, such error was still harmless. Harmless error exists where the error did not prejudice a party or it was merely cumulative of other substantially similar evidence. *See Commonwealth v. Yockey*, 158 A.3d 1246 (Pa. Super. 2017). Notably, the School District did not argue that it was prejudiced by Mother's deposition testimony. Moreover, the School District attended Mother's deposition and cross-examined her. N.T. at 14-30. Thereafter, the School District incorporated Mother's testimony into its trial court appeal brief. *See* R.R. at 205a ("The [School] District hereby incorporates the complete [r]ecord of the [Board] and [t]ranscript of [Mother's] deposition testimony by reference as if fully stated herein."). Finally, Mother's testimony was cumulative of the record evidence before the Board. *See* N.T. at 10.

[15] Student presents a myriad of claims that the School District waived its evidentiary arguments on appeal. This Court does not find that to be the case.

11

failing to recognize that the Board's findings of fact were conclusive on appeal, and by concluding that substantial evidence did not support the Board's adjudication.

> The School District is correct that

> [where, as here,] a complete record was made before the [Board], it is that body and not the trial court which is the ultimate fact[-]finder in these proceedings, and has the prerogative to determine the weight to be given to the evidence. Its findings are conclusive and may not be disturbed on appeal.

*SSEN, Inc. v. Borough Council of Borough of Eddystone*, 810 A.2d 200, 207 (Pa. Cmwlth. 2002) (citation omitted). Notwithstanding, this Court has explained:

> Although the "abuse of discretion" scope of review is not expressly provided for in . . . [Section 754(b) of] the Local Agency Law, it is included in the requirement that the agency decision be "in accordance with law." To be "in accordance with law," an agency's decision must not represent a manifest and flagrant abuse of discretion or a purely arbitrary execution of its duties or functions. . . .

*In re Rainmaker Capital of Chestnuthill, LLC*, 23 A.3d 1117, 1122-23 (Pa. Cmwlth. 2011) (quoting *Leckey v. Lower Southampton Twp. Zoning Hearing Bd.*, 864 A.2d 593, 596 n.4. (Pa. Cmwlth. 2004)).

> Further,

> the issues [before the trial court] [we]re whether there [wa]s substantial evidence to support the Board's findings and conclusion that [Student] did not reside within the [School] District as required by Section 1302(a) [of the School Code,] and whether that evidence substantiates the Board's determination that [Student] does not reside in the [School] District. Substantial evidence is "evidence that a reasonable mind might accept as sufficient to support a conclusion." *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 842 (Pa. Cmwlth. 2014). "[A]ppellate review must focus on whether there is rational support in the record, when reviewed as a whole, for the agency action." *Republic Steel Corp. v. Workmen's Comp. Appeal Bd.*

12

*(Shinsky)*, . . . 421 A.2d 1060, 1063 ([Pa.] 1980). "When performing a substantial evidence analysis, the [trial] court must view the evidence in the light most favorable to the party that prevailed before the fact[-]finder." *Bonatesta v. N. Cambria Sch. Dist.*, 48 A.3d 552, 558 (Pa. Cmwlth. 2012). It is for the [] [B]oard, not the court, to assess the credibility of the witnesses. *Hickey v. Bd. of Sch. Dir. of Penn Manor Sch. Dist.*, . . . 328 A.2d 549, 551 ([Pa. Cmwlth.] 1974). "However, a court will 'overturn a credibility determination if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational.'" *Bonatesta*, 48 A.3d at 558 (quoting *Agostino v. Twp. of Collier*, 968 A.2d 258, 263-64 (Pa. Cmwlth. 2009)).

*Whitacker-Reid*, 160 A.3d at 916. Moreover, improperly admitted evidence is not substantial evidence that can support a factual finding. *See Hauck v. Unemployment Comp. Bd. of Rev.*, 271 A.3d 961 (Pa. Cmwlth. 2022).

Here, the Board based its conclusion that Student did not live in the School District on Dr. Hadley's recitation of Mother's out-of-court statement and CSI's surveillance results. *See* Board Op. at 2-5 (R.R. at 135a-138a). Despite that the School District had the burden of proof, it did not call Mother or the community member who brought the question of Student's residency status to the School District's attention to testify at the hearing. Rather, based on Dr. Hadley's claim that he heard Mother say that Student "ha[d] been staying with [Mother] at Marie Avenue[,]" R.R. at 50a, the Board found: "During th[e] [January 6, 2022] meeting [with Dr. Hadley,] Mother stated that Student was residing with her." Board Op. at 3 (R.R. at 136a). The Board also declared: "Most significant from [Dr.] Hadley's testimony is a conversation he had with Father and Mother, wherein Mother stated that Student lived with her. Clearly, a parent's statement as to the location of the residence is deserving of substantial weight by th[e] Board." Board Op. at 5 (R.R. at 138a).

13

This Court has articulated:

> Although local agencies, such as [the Board], are not bound by technical rules of evidence, Section 554 of the Local Agency Law, 2 Pa.C.S. § 554, this does not mean that these local proceedings are evidentiary free-fire zones. . . . [T]here are fundamental rules of law to which an agency must adhere to ensure fairness to all parties.

*Ray*, 131 A.3d at 1024. In particular, "[h]earsay, defined as a declarant's out-of-court statement or assertion offered into evidence to prove the truth of the matter asserted, is generally inadmissible unless an exception applies." *Worley v. Cnty. of Del.*, 178 A.3d 213, 230 (Pa. Cmwlth. 2017); *see also* Pennsylvania Rule of Evidence 802, Pa.R.E. 802. This Court has declared: "[T]he hearsay rule is not a mere technical rule of evidence, but a fundamental rule of law which ought to be followed by agencies when *facts crucial to the issue* are sought to be placed on the record . . . ." *Ray*, 131 A.3d at 1024 (quoting *A.Y. v. Dep't of Pub. Welfare, Allegheny Cnty. Child. & Youth Servs.*, 641 A.2d 1148, 1151 (Pa. 1994)).

> [This Court] ha[s] consistently applied the following standard, referred to as the *Walker* Rule, to determine whether hearsay evidence is admissible at administrative proceedings:
>
> > (1) Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding of [an agency][;]
> >
> > (2) **Hearsay evidence**, [a]**dmitted without objection**, **will be given its natural probative effect and may support a finding of** [an agency], [i]**f it is corroborated by any competent evidence in the record**, but a finding of fact based [s]oley [sic] on hearsay will not stand.[16]

---

[16] Although "[a] finding of fact based solely on hearsay evidence does not constitute reversible error if the finding is unnecessary to support the adjudication[,]" *Ray*, 131 A.3d at 1022, where, as in this case, the factual finding necessary to support the local agency's adjudication must

> *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, . . . 807 A.2d 906, 915 ([Pa.] 2002) (citing *Walker v. Unemployment Comp. Bd. of Rev*[.], . . . 367 A.2d 366, 370 ([Pa. Cmwlth.] 1976)).

*Lancaster Cnty. Child. & Youth Servs. Agency v. Dep't of Hum. Servs.*, 235 A.3d 402, 411 (Pa. Cmwlth. 2020) (emphasis added). Thus, "hearsay evidence, even if admissible and not objected to, does not alone constitute substantial evidence." *A.P. v. Dep't of Pub. Welfare*, 696 A.2d 912, 915 (Pa. Cmwlth. 1997). Accordingly, for the Board to admit and rely on Mother's alleged statement in this case, the statement had to be supported by corroborating record evidence. The Board's observation that Student "did not attempt to discredit [Dr. Hadley's testimony] or show that [Mother's statement] was never made[,]" Board Op. at 5 (R.R. at 138a), was not corroborating evidence, particularly when Student did not have the burden of proof.

Arguably, under the right circumstances, the School District's surveillance evidence could possibly corroborate Dr. Hadley's hearsay statement. However, even viewing the surveillance evidence in a light most favorable to the School District, as this Court must, *see Whitacker-Reid*, such evidence merely established that Student was at Mother's residence in the mornings on the seven dates in October and November 2021, and Mother drove him to school on those dates. Father testified about why that occurred. The Board weighed Father's testimony against the surveillance evidence, as it was permitted to do, and found in the School District's favor. Yet, in weighing the evidence, the Board again improperly placed the burden of proof on Student. Specifically, the Board concluded that Student "failed to establish that [he] resided at the Emsworth address[,]" because he did not produce witnesses, mail or photographs to confirm that Student had his own room and lived with Father. Board Op. at 5 (R.R. at 138a). The Board also

---

be corroborated by other record evidence. *See Bell Beverage v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 49 (Pa. Cmwlth. 2012).

stated: "[T]he crux of [Student's] evidence consisted of [Father's] explanation as to why Student was found to be at [Mother's] address" on the surveillance dates, rather than proof that there was a rear entrance to Mother's home and Father transported Student there in the mornings to pick up his work tools. *Id.*

> In addition, the Board declared:
>
> Father attempted to discredit CSI's surveillance because its employees failed to capture the rear entrance of [Mother's] residence . . . . The Board rejects this attempt, as Father's own testimony indicated that there were security cameras at the rear entrance. Yet, no footage was offered[,] by Father[,] of Student regularly entering the residence between 5:30 a.m. and 6:00 a.m. when [Father] allegedly arrived there to gather his tools.

*Id.* As stated above, Student did not have the burden to supply such evidence, and this Court holds that the School District's surveillance evidence *alone* is not "evidence that a reasonable mind might accept as sufficient to support a conclusion[,]" *Whitacker-Reid*, 160 A.3d at 916 (quoting *Spencer*, 97 A.3d at 842), that Student lived "for a majority of the time," 22 Pa. Code § 11.11(a)(1), with Mother.

> Lastly, this Board [found] it unrealistic that Student wakes up approximately two hours before he departs for the . . . Career Center just to be transported by Father from the Emsworth address to the Avalon address, where he would need to remain for over one hour, before leaving, especially when [School] District-provided transportation is available at the Emsworth address.

Board Op. at 5. Certainly, the Board's finding that Father dropping Student off at Mother's house in the mornings before school is "unrealistic" is not based on any record evidence, let alone substantial evidence.[17] *Id.*

---

[17] This ruling is particularly so in the face of Father's testimony that he and Mother have been advised not to leave Student alone, and Student would be alone at Father's residence before school if Father did not bring him to Mother's home. *See* R.R. at 72a-73a.

16

> There must be substantial evidence in the record to support the Board's findings of fact and its conclusion that [Student] is not a resident of the [School] District. Many of the Board's findings are either not supported by substantial evidence or are based on evidence that simply suggests or speculates that there *could be* a residency concern or issue. . . .[18] Where a school district excludes children from attendance at its schools based upon the parent(s) non-residency, which also may potentially result in, among other things, criminal charges and having to repay the school district for the education the children have received, substantial evidence of that non-residency is required in order "to substantiate [a school district's] determination that [a [student] is] . . . not [a] resident[ ]" of the school district. *Behm*, 996 A.2d at 66. Because the [School] District did not present such evidence, it did not substantiate its determination regarding [Student's] non-residency.

*Whitacker-Reid*, 160 A.3d at 921 (footnote, quotation marks and internal citation omitted).

Under the circumstances, this Court holds that the Board giving more weight to the School District's surveillance evidence than Student's evidence was "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed," *Whitacker-Reid*, 160 A.3d at 916 (quoting *Bonatesta*, 48 A.3d at 558), and that it was not substantial evidence upon which the Board could base its conclusion. By extension, the surveillance evidence could not corroborate Dr. Hadley's hearsay statement. Accordingly, the trial court properly concluded that substantial evidence did not support the Board's adjudication.

Finally, the School District argues that the trial court erred by reversing the Board's adjudication without conducting a hearing, which was contrary to the Local Agency Law. As stated above, the trial court reviewed this matter pursuant to

---

[18] The Board here appears to have conflated the terms "staying with," R.R. at 50a, as "residing with." Board Op. at 3 (R.R. at 136a). Certainly, the phrase *staying with* could also mean visiting for a few days/weeks or for a few hours in the mornings.

Section 754(b) of the Local Agency Law.  This Court acknowledges that Section 754(b) of the Local Agency Law references the trial court *hearing* an appeal.  However, the law is well settled:

> Pursuant to Section 754(b) [of the Judicial Code], **a reviewing [trial] court may properly reverse where it determines that** constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or **the necessary findings of fact were not supported by substantial evidence**. [*See*] SSEN; *Sparacino v. Zoning B*[*d.*] *of Adjustment, City of Phila*[.], 728 A.2d 445 (Pa. Cmwlth. 1999) . . . .  A reviewing court **may look only to the evidence relied upon by the fact**[**-**]**finder**, in this case [the Board], to see if it is sufficiently substantial to support the findings.  Section 754(b) of the Local Agency Law; *SSEN; Kish v. Annville-Cleona Sch*[.] *Dist*[.], . . . 645 A.2d 361, 363-[]64 ([Pa. Cmwlth.] 1994).  "**Nowhere in Section 754**[**(b) of the Local Agency Law**] **is the reviewing court given general authority to make its own findings of fact** and conclusions of law when the local agency has developed a full and complete record. . . . "  *Soc*[*'*]*y Created to Reduce Urban Blight (SCRUB) v. Zoning B*[*d.*] *of Adjustment of the City of Phila*[.], 804 A.2d 147, 150 (Pa. Cmwlth. 2002).

*Thompson*, 896 A.2d at 668 (emphasis added).  Hence, under Section 754(b) of the Local Agency Law, "the [trial] court shall hear the appeal . . . **on the record certified by the agency**."  2 Pa.C.S. § 754(b) (emphasis added); *see also Bonatesta* (wherein this Court upheld the trial court's reversal of a school board's decision without a hearing, based on the school board's record).

Here, the trial court conducted a conference with the parties on May 6, 2022, and, on May 27, 2022, ordered the parties to file briefs regarding their positions, which they did.  The trial court based its decision on the Board's record and the parties' arguments, as authorized by Section 754(b) of the Local Agency

18

Law. Accordingly, the trial court did not err by reversing the Board's adjudication without conducting a hearing.

Based on the foregoing, the trial court's order is affirmed.

_____

ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.W., a minor by his parent     :
and guardian, H.W.     :
    :
    v.     :
    :
Avonworth School District,     :   No. 1199 C.D. 2022
    Appellant     :

## O R D E R

AND NOW, this 2nd day of June, 2023, the Allegheny County Common Pleas Court's October 3, 2022 order is affirmed.

_____
ANNE E. COVEY, Judge